Sean A. O'Keefe – State Bar No. 122417
**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Tel: 949.334.4135
Fax: 949.274.8639
Email: sokeefe@okeefelc.com
Proposed Special Litigation Counsel to
Kavita Gupta, Chapter 11 trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANAGELES DIVISION

| | |
|---|---|
| In re:<br><br>THOMAS SHAYMAN, an individual,<br><br>Debtor | **Case No. 2:12-bk-33548-BB**<br><br>**Adv. No. _____**<br><br>**Chapter 11 Proceedings** |
| KAVITA GUPTA, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS SHAYMAN, an individual; HENRY KLEIN, as trustee of the trust established for benefit of Thomas Shayman under the terms of the Shayman Living Trust,<br><br>Defendants | **COMPLAINT FOR JUDGMENT RE (A) DECLARATORY RELIEF; (B) DENIAL OF DISCHARGE; (C) TURNOVER OF ESTATE ASSETS; (D) INJUNCTIVE RELIEF; AND (E) AUTHORIZATION TO RECORD LIS PENDENS** |

Kavita Gupta, the duly appointed and acting Chapter 11 trustee in the above-entitled case (the "Trustee" or "Plaintiff"), and the plaintiff in this adversary proceeding, respectfully alleges as follows:

# I

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, in that this adversary proceeding is a civil proceeding arising in, and related to, the case of <u>In re Thomas Shayman</u>, Case No. 2:12-bk-33548-BB (the "Bankruptcy Case") that was filed under Chapter 11 of Title 11 of the United States Code on July 12, 2012 (the "Petition Date").

2. This adversary proceeding is a core proceeding under, *inter alia*, 28 U.S.C. §§ 157(b)(2)(A), (E), (J) and (O).

3. If this adversary proceeding is determined to be a non-core proceeding, the Plaintiff consents to the entry of final orders and judgments by the bankruptcy judge. The Debtor, as the defendant herein, is hereby notified that Fed. R. Bankr. P. 7012(b) requires the Debtor to admit or deny whether this adversary proceeding is a core or non-core proceeding and, if non-core, to state whether they do or do not consent to entry of final orders or judgment by the bankruptcy judge.

4. Venue in this Court is proper under 28 U.S.C. § 1409(a), in that this adversary proceeding is a civil proceeding arising in and related to a case under Chapter 11 of Title 11 of the United States Code pending in the United States Bankruptcy Court for the Central District of California (the "Court"), this adversary proceeding seeks the recovery of property having a value of more than one thousand dollars, and it does not involve a consumer debt.

# II

## PARTIES

5. The Plaintiff is the duly appointed and acting Chapter 11 Trustee in this case pursuant to that certain order entered on November 27, 2013.

6. The defendant, Thomas Shayman (the "Debtor"), is an individual who resides in Los Angeles County, California, and he is the debtor in the above-entitled Chapter 11 case.

7. The defendant, Henry Klein, is the trustee of a trust (the "GS Trust") that was established for the benefit of the Debtor pursuant to the terms of that certain *Amended and Restated Shayman Living Trust* (the "Amended Trust Agreement"), and he is being named as a defendant herein solely in his capacity as a trustee of the GS Trust.

### III

### GENERAL ALLEGATIONS

8. The Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code on July 12, 2012 (the "Petition Date").

9. The Debtor prepared and filed the bankruptcy schedules that appear on the docket of this Court as Docket 12, as amended by the amendments that appear on the docket as Docket 102 (together the "Schedules").

10. As of the Petition Date, the Debtor owned all of the common stock of Burbank Bar & Grille, Inc., a California corporation ("BB&G"), and Opus Platinum, Inc., a California corporation ("Opus").

11. The Debtor is also the President of BB&G and Opus.

12. BB&G and Opus each own and operate separate restaurants in Burbank, California.

13. The Trustee, as the representative of the estate, now holds all rights in and to the common stock of BB&G and Opus.

### The Debtor's Acts of Concealment and Fraud

14. Prior to the Petition Date, BB&G failed to pay approximately $250,000 in payroll taxes owed to the Internal Revenue Service (the "Payroll Tax Claim").

15. The Debtor has personal liability for the Payroll Tax Claim pursuant to, *inter alia*, IRC § 6672(a), as the "responsible person" at BB&G.

16. The Debtor failed to list the Payroll Tax Claim on Schedule E of the Schedules. To the contrary, he checked the box for "none" on this schedule.

17. Prior to the Petition Date, the Debtor loaned BB&G approximately $1.5 million (the "Loan Claim"), and as of the Petition Date this claim remained due and owing.

18. The Loan Claim is property of the Estate.

19. The Debtor failed to list the Loan Claim in the Schedules.

20. As of the Petition Date, the Debtor owned a whole life insurance policy with a cash value of approximately thirty thousand dollars ($30,000) (the "Policy").

21. The Policy was not listed in the Schedules.

22. As of the Petition Date, the Debtor owned a 2011 GMC Terrain with an approximate value of sixteen thousand dollars ($16,000) (the "Vehicle").

23. The Vehicle was not listed in the Schedules.

24. Prior to the Petition Date, Burbank Management Group, Inc. ("BMG") entered into a contract with S.S. Golf, Inc. to provide catering services to the DeBell Golf Club in Burbank, California. As part of this transaction. BMG entered into a contract with the Debtor to pay him a salary in $50,000 to $70,000 per annum range that was scheduled to begin in January 2014 (the "BMG Income").

25. The BMG Income was not disclosed in the Disclosure Statement that the Debtor filed in this case, and he failed to amend the Schedules to include this income.

26. As of the Petition Date, the Debtor was the settlor and the trustee of a revocable trust. However, this trust was not disclosed as required in the Schedules.

**The GS Trust Interest**

27. John W. Shayman and Jo Ann K. Shayman (the "Settlors"), who the Trustee believes to be the Debtor's deceased parents, formed the Shayman Living Trust on or about November 1, 1973 (the "Original Trust").

28. On or about February 16, 2001, the Settlors executed the Amended Trust Agreement.

29. The Amended Trust Agreement provides, inter alia, for the creation of three trusts upon the death of the first of the Settlors: A "Survivors Trust", a "Marital Trust" and an "Exemption Trust".

30. Pursuant to the Amended Trust Agreement, upon the death of the second of the Settlors, the remaining and un-appointed property in the Survivors Trust and the Marital Trust, with certain limited exceptions, was to be transferred to the Exemption Trust. Thereafter, a part of

the assets in the latter Trust were to be distributed to the Shayman children outright, and the balance of the assets were to be divided into two separate trusts (equally), for the Settlors' children (the "Childrens' Trusts").

31. Both Settlors passed away prior to the Petition Date, and as of such date the Debtor became the sole living beneficiary of one of the two separate Childrens' Trusts (the "GS Trust").

32. Pursuant to the Amended Trust Agreement, a specified share of the assets in the GS Trust was distributed to the Debtor outright, and the balance of the assets was held in the GS Trust. The assets currently held in the GS Trust include a residence located in California with a value in excess of $1.5 million.

33. Pursuant to Section VIII(B)(3) of the Amended Trust Agreement, the trustee of the GS Trust has the absolute right to distribute to the Debtor some or all of the income and principal of the GS Trust, at any time, to the extent the Trustee deems, *in his absolute discretion*, that such distributions are "necessary for the child's health, education, support and maintenance."

34. Pursuant to Article IV(B) of the Amended Trust Agreement, the Debtor is authorized to be the Trustee of the GS Trust, and in fact this provision of the agreement specifically provides that each child "shall become and act as the sole Trustee" of their respective Childrens' Trust.

35. Although the Debtor appointed Defendant Klein to fulfill his role as the trustee of the GS Trust, prior to the Petition Date the Debtor was (for a period of time) the sole trustee of the GS Trust, and he retains the power to remove Defendant Klein and to reappoint himself as sole trustee of the GS Trust, once again. The Debtor's power to appoint the trustee of the GS Trust is now held by the Trustee.

36. Since the Debtor has no children, and he has the right to appoint himself as the sole trustee of the GS Trust, the Debtor is effectively the sole trustee and the sole beneficiary of the GS Trust.

37. Since the Debtor has the power and absolute right to serve as the trustee of the GS Trust, and in this capacity he has the "absolute" discretion to distribute to himself all of the assets of the GS Trust, the Debtor has unfettered control over the assets in the GS Trust.

1  38. Since the inception of the GS Trust in 2009, the Debtor has used his unfettered
2 control over the GS Trust to obtain five hundred thousand dollars ($500,000) of distributions, of
3 which fifty thousand ($50,000) was distributed to the Debtor post-petition (the "Trust
4 Distributions").

5  39. The Debtor did not disclose his interest in the GS Trust in the Schedules.

6  40. The Debtor did not disclose the distributions that he received from the GS Trust in
7 the Statement of Affairs attached to the Schedules.

8  41. The assets in the GS Trust have substantial value, and in fact if such assets were
9 liquidated, and distributed to the Debtor it is likely that all claims of creditors in this case would
10 be paid in full.

11  42. After the Petition Date, the Debtor received a distribution from the GS Trust in the
12 amount of fifty thousand dollars ($50,000) (the "Post-petition Distribution").

13  43. Even if the Debtor's disputed contention that the foregoing distribution was
14 protected by a "spendthrift" provision in the GS Trust was correct, pursuant to the California
15 Probate Code at least twelve thousand dollars ($12,000) of this sum was subject to recourse by his
16 creditors, and consequently constituted property of the estate. However, the Debtor did not deposit
17 the latter sum into the debtor-in-possession operating account as he was required.

## IV

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

21  44. The Trustee hereby realleges and restates the allegations in paragraphs 1 through 43
22 above in support of this claim for relief.

23  45. A dispute exists regarding the enforceability of the spendthrift restrictions in the
24 Amended Trust Agreement, and regarding the ownership of the assets in the GS Trust.

25  46. It is the Trustee's contention that the Debtor's control over the GS Trust is so
26 absolute that the spendthrift provision in the Amended Trust Agreement is ineffective and that in
27 fact the property therein is property of the estate. See In re Witwer, 148 B.R. 930, 937-38 (Bankr.

28

1  C.D. Cal. 1992) aff'd, 163 B.R. 614 (B.A.P. 9th Cir. 1994). The Debtor and Defendant Klein
2  dispute this contention.

3      47.    The Trustee seeks judgment declaring and stating that:

4        A. the spendthrift provisions in the GS Trust are either ineffective, or they
5           have been rendered void by the Debtor's exercise of excessive control
6           over the GS Trust; and

7        B. the property in the GS Trust constitutes property of the estate.

## V

## SECOND CLAIM FOR RELIEF

**(Judgment Denying Discharge Pursuant to 11 U.S.C. § 727(a)(2))**

11      48.    The Trustee hereby realleges and restates the allegations in paragraphs 1 through 43
12  above in support of this claim for relief.

13      49.    The Debtor, with the intent to hinder, delay and defraud an officer of the estate, and
14  his creditors, knowingly and fraudulently concealed property of the estate by failing to disclose the
15  Loan Claim, the Policy, the Vehicle, the Trust Distributions, the BMG Income, and his interest in
16  the GS Trust in the Schedules.

## VI

## THIRD CLAIM FOR RELIEF

**(Judgment Denying Discharge Pursuant to 11 U.S.C. § 727(a)(4))**

20      50.    The Trustee hereby realleges and restates the allegations in paragraphs 1 through 43
21  above in support of this claim for relief.

22      51.    The Debtor, knowingly and fraudulently, made a false oath by failing to disclose
23  the Loan Claim, the Policy, the Vehicle, the BMG Income, his interest in the GS Trust, the
24  revocable trust, the Trust Distributions, and the Payroll Tax Claim in the Schedules.

## VII

## **FOURTH CLAIM FOR RELIEF**

### **(Turnover)**

52. The Trustee hereby realleges and restates the allegations in paragraphs 1 through 43 above in support of this claim for relief.

53. The property in the GS Trust, the Loan Claim and the Vehicle constitute property of the estate.

54. The Debtor has failed and refused to turnover to the Trustee the foregoing property.

55. In order to administer and liquidate the foregoing property of the estate the Trustee requires an order compelling the Debtor to turnover such property to the Trustee.

## VIII

## **FIFTH CLAIM FOR RELIEF**

### **(Injunctive Relief)**

56. The Trustee hereby realleges and restates the allegations in paragraphs 1 through 43 above in support of this claim for relief.

57. During this case the Debtor has failed to disclose substantial assets that constitute property of the estate and he has failed to disclose substantial prepetition claims.

58. As more fully explained above, the Trustee contends that the spendthrift provision in the Amended Trust Agreement is invalid and consequently the property held by the GS Trust constitutes property of the estate.

59. One of the assets held within the GS Trust is a residence located at 2875 Montecielo Dr., Santa Ynez California 93460 (the "Santa Ynez Property").

60. The Santa Ynez Property has a value of approximately $1.7 million and it is the Trustee's understanding that this property is unencumbered.

61. Based upon the Debtor's fraudulent conduct in this case, the Trustee is concerned that the Debtor will attempt to encumber or otherwise dispose of the Santa Ynez Property and the other property of the GS Trust before the Trustee can obtain a ruling on the estate's right to obtain recourse to the assets in the GS Trust.

62. If the Debtor were to succeed in encumbering or otherwise disposing of the assets in the GS Trust prior to a ruling on the claims in the adversary proceeding, the estate's rights would be irreparably harmed, since recourse against the Debtor at that point in time would be limited. Accordingly, if the Debtor does undertake the foregoing actions the Trustee would have no adequate remedy at law.

63. The Trustee's claims against the GS Trust are well supported by California law. Accordingly, the Trustee has a likelihood of obtaining a judgment in the estate's favor on these claims.

64. Barring the Debtor from encumbering or otherwise transferring the assets in the GS Trust pending a ruling in his adversary will not prejudice the Debtor.

## PRAYERS FOR RELIEF

WHEREFORE the Trustee prays for a judgment granting the following relief:

### First Claim For Relief

A judgment declaring and stating that the spendthrift provisions in the GS Trust are invalid and that the estate has recourse to the assets of such trust;

### Second Claim For Relief

A judgment denying the Debtor's discharge based upon 11 U.S.C. § 727(a)(2);

### Third Claim For Relief

A judgment denying the Debtor's discharge based upon 11 U.S.C. § 727(a)(4);

### Fourth Claim For Relief

A judgment compelling the Debtor to turnover to the Trustee all property in the GS Trust as property of the estate;

### Fifth Claim For Relief

A judgment enjoining the Debtor from encumbering or otherwise transferring the property within the GS Trust until a final judgment is granted in this adversary, and authorizing the Trustee to either record this injunction in the title record of the Santa Ynez Property or authorizing the Trustee to record a lis pendens in such title records referring to the pendency of this action; and

## All Claims For Relief

For an award of all fees and costs incurred in the pursuit of the claims in this action, and such further relief as the Court deems just and proper.

**DATED:** January 10, 2014	**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**

By: /s/ Sean A. O'Keefe
Sean A. O'Keefe, Proposed counsel to the Chapter 11 trustee and plaintiff, Kavita Gupta

Complaint - shayman v6 FNL